# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 6, 2013 Session

## BRYANT COLEY, SR. ET AL. v. MIKE DI SORBO ET AL.

**Appeal from the Chancery Court for Cumberland County**
**No. 2008-CH-164      Ronald Thurman, Chancellor**

---

**No. E2012-01347-COA-R3-CV-FILED-MAY 30, 2013**

---

Property owners, Bryant Coley, Sr., his son, Bryant Coley, Jr., and their wives, filed a declaratory judgment action against fiduciaries, Mike Di Sorbo and Michelle Di Sorbo,[1] after the Di Sorbos refused the Coleys access to a road that crossed their ward's property. The Coleys requested that the court declare the road a public road and enjoin the interference of its use. Following a bench trial, the court found that the "route" in question was not a dedicated public road. Consequently, it dismissed the complaint. The Coleys appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Michael Savage, Livingston, Tennessee, for the appellants, Bryant Coley, Sr., Bryant Coley, Jr., Etta Coley and Eleisha Coley.

C. Douglas Fields, Crossville, Tennessee, for the appellee, Cumberland Lakes POA.

S. Roger York, Crossville, Tennessee, for the appellees, Mike Di Sorbo and Michelle Di Sorbo, as trustees and natural parents and next friends of Aldo Michael Di Sorbo, a child under 18 years of age.

---

[1]The Di Sorbos were sued in their fiduciary capacity as trustees for and natural parents and next friends of Aldo Michael Di Sorbo, a minor. Their ward owns the property. Additional defendants include Cumberland County, Cumberland Lakes POA, and the Cumberland County Planning Commission. The defendants have filed a joint brief.

Randal R. Boston, Crossville, Tennessee, for the appellees, Cumberland County and Cumberland County Planning Commission.

**OPINION**

I.

At issue is a "road" that, for clarity and ease of reference, we will refer to as the "Old Road." The Coleys contend that the Old Road, in its entire length, extends from Plateau Road in Cumberland County to Jim Garrett Road in Putnam County. In October 2008, the Coleys filed a complaint seeking, in part, a declaration of the parties' rights and responsibilities with respect to the Old Road. They asserted in their complaint that the Old Road is a "county road by implied dedication and/or a public road" that crosses the Di Sorbos' abutting property and "eventually leads to and through a portion of" the Coleys' property. Before trial, however, the parties agreed that the Old Road was not a "county road." The Coleys further asserted that the Old Road provided "the only viable means to access the westernmost portion of [the Coleys'] property."

After a day-long hearing, the trial court held that "[t]here was no dedication of the route as a public road." The court found, in relevant part, as follows:

> The route in question is not currently in use by the public.
>
> [Although] the route in question[] [was] used by various persons for a number of years, the Plaintiffs failed to carry their burden to show the road was dedicated to public use as a public roadway by the landowner(s) where it was located.
>
> If the route was not dedicated, it never became a public road through which [the Coleys] could derive rights to its use presently.
>
> Alternatively, if the Court is in error as to the issue of dedication and the route was a public road, then the Court would find [the Coleys] have an easement across the Subdivision as a result of [the Coleys] being abutting land owners.

The trial court dismissed the complaint. The Coleys filed a timely notice of appeal.

-2-

II.

The Coleys raise a single issue for our review:

> Whether the road at issue was dedicated to the public as a public
> road.

III.

Our review of findings of fact by a trial court is de novo upon the record of the trial court. That record comes to us accompanied by a presumption of correctness as to the court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. App. 2002). Review of questions of law is de novo, with no presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

IV.

A.

Certain facts are not in dispute. The Di Sorbos are the fiduciary owners of property in a subdivision called Cumberland Lakes at Cumberland Cove (the "Subdivision"). Their property fronts Mountain Ash Drive, a two-lane paved county road within the Subdivision. The Di Sorbos purchased their property, Lot 9, in 2008 for nearly $22,000; they plan to build a house on it. Earlier, in 1995, the Coleys had purchased a 530-acre tract that abuts a portion of the Subdivision. Specifically, the westernmost boundary of the Coleys' land runs along the easternmost, or back property lines, of several Subdivision lots, including the Di Sorbos' Lot 9. In all, the Coleys own some 1,000 acres in the area. To place the dispute in context, the Old Road, as claimed by the Coleys, is an unimproved road that starts at Mountain Ash Drive to the west and goes eastward across the northern portion of the Di Sorbos' lot (a distance of 200 feet) and into the westernmost portion of the Coleys' property and beyond into another adjoining property.

The Coleys contend that the evidence overwhelmingly shows that the Old Road was and is a public road by implied dedication. Further, even if part of the road has been abandoned, they have a continuing, private right as abutting landowners to use it to access

a portion of their land. The Di Sorbos respond that when all the of the proof is considered, it shows not a road dedicated for public use, but, at most, the permissive use of a route through unimproved woodlands that the servient landowners could end at will.

B.

We concur with the trial court that the dispositive question in this case is whether there was an *implied* dedication of the Old Road as a public road. Recently, this Court discussed at length the considerations relevant to this determination. In *Lay v. Wallace,* W2011-02285-COA-R3-CV, 2013 WL 654360 (Tenn. Ct. App. W.S., filed Feb. 21, 2013), we stated, in relevant part:

> A public road may be created by [among other methods] . . . an implied dedication by means of the use by the public and acceptance by them with the intention of the owner that the use become public . . . . Dedication arises from an owner's offer of land for public use, and a public acceptance of the offer. The offer and acceptance may be express or implied.
>
> *    *    *
>
> When an implied dedication is claimed, the focus of the inquiry is whether the landowner intended to dedicate the land to a public use. To establish a dedication by implication there must be proof of facts from which it positively and unequivocally appears that the owner intended to permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct.
>
> Among the factors that indicate an intent to dedicate are: (1) the landowner opens a road to public travel; (2) acquiescence in the use of the road as a public road; and (3) the fact that the public has used the road for an extended period of time. Implied dedication may be inferred [i]f the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate[.] While dedication is not dependent on duration of the use, extended use is a circumstance tending to show an intent to dedicate. An intent to dedicate is inferrable when the roadway is repaired and maintained by the public. Finally, [a]n

-4-

implication of public acceptance arises from a general and long-continued use by the public as of right.

*Id*. at *2-3 (internal citations and quotation marks omitted).

The Coleys, as the parties asserting that the Old Road is a public road by implied dedication, have the burden of proving, by clear and convincing evidence, "an intention on the part of the landowner to dedicate the road to the public, and that the road was either expressly or impliedly accepted by the public." ***Hargrove v. Carlton,*** M2000-00250-COA-R3-CV, 2001 WL 120732 at *2 (citing ***Jackson v. Byrn***, 216 Tenn. 537, 393 S.W.2d 137, 140 (Tenn. 1965)). We now turn to the proof in the record.

### C.

At trial, the court heard testimony from the Coleys and their witnesses regarding the history of the Old Road. They referred to the road, or portions thereof, by a various names, including Baisley Road, Bartley Road, and Sidwell Road. Others testified the road had no name or was simply an "old road." As to its use, there was testimony that, in the early 1900s, the land over which the Old Road ran consisted mostly of hundreds of acres of open woodlands. In more recent years, some large areas were sold for development, including the Subdivision property. The Subdivision plat was recorded in 1988 and the lot lines were painted and visible when the Coleys purchased their acreage. As to the Coleys' chain of title, the testimony indicated that the Baisleys owned the land until 1933, when they sold it to the Sprankles.[2] The Sprankles owned it from 1933 until 1995 when it was sold at a bankruptcy auction. The purchasers later sold it to the Coleys. The Di Sorbos' property, on the other hand, was originally a part of the land owned by the Harrisons who sold it to the Subdivision developers.

Bryant Coley, Sr., lived in the area since 1966. He said the Old Road "had always been there" and he "knew people were using it," but he did not use it very often until he purchased his property in 1995. He never saw any "fancy cars" on the road but had seen some pickup trucks. He named five persons who took the Old Road to access hunting areas. He said that the Baisleys used part of the Old Road, the "Baisley Road," to get to their property. He testified that they "used it to go through there. Some would hang back there. Some . . . were back there digging herbs and some . . . of their relatives, to get in and out for business purposes." Coley, Sr., testified that at one time a Castro Pugh owned a sawmill down from the Old Road and used it "going both ways."

---

[2]The transcript also reflects the name as "Sprinkles."

After purchasing his property, Coley Sr., immediately placed a hot wire fence around it and went on the Old Road several times a week to check his cattle. Later, he replaced the fence with a barbed wire fence with a metal gate. He testified he locked the gate to keep the cattle in, not to keep people out, and because he "didn't figure anyone needed to go down [the Old Road]." He gave a key "to anybody that wanted . . . to get in there." Coley, Sr., maintained that all of the Old Road was a public road even though both he and the adjoining property owner on the other side, Jimmy Davis, had placed gates across it on their respective properties. Coley, Sr., never asked permission to use the Old Road across the Di Sorbos' lot because "it was a public road. You don't ask permission." He did ask the property owner's association for the Subdivision for permission to carry materials across the various lots, including the Di Sorbos', when he installed his permanent fence.

Around 2008, Coley, Sr., found the Old Road blocked with stumps at the entrance from Mountain Ash Drive to the Di Sorbo lot. He received calls from persons representing the Subdivision who advised him that the land over which he contended Old Road ran was private. Asked why he believed the road was public, Coley, Sr., said "because the public always used it. That was the only way the Baisleys had of getting through there. . . ." He was aware that the Sprankles also used a portion of the Old Road because he went with a Mr. Rose on it to check the timber on their property. Without naming others, he repeatedly asserted that the Old Road was a public road because "everybody used it."

Coley, Sr., conceded that no right-of-way for the Old Road was ever reflected in any of the relevant deeds. Furthermore, he acknowledged that he never claimed one in connection with the bankruptcy proceedings concerning his tract. According to Coley, Sr., the Harrisons, about once a year, had "cleaned out . . . the brush and stuff" on all of the roads in the area – on their own property and everyone else's – including the sections of the Old Road across the property of the present-day owners. They last did so in around 1969. Coley, Sr., agreed that when he purchased his property, the land was open woodlands that people mainly used for timber, to haul out rock and to get to their own property. Coley, Sr., introduced a state topographical map. He testified that an "unimproved road" marked on the map depicted the Old Road between Plateau Road and Jim Garrett Road. He admitted that, while it did identify many of the public roads in the area, it did not name or identify the Old Road as a public road.

The Di Sorbos did not testify, but the parties stipulated to the testimony they would have given, including that the Di Sorbos never received notice from any source, including the recorded subdivision plat, of any purported road going through their lot. Further, the Di Sorbos walked around the lot before purchasing it and did not notice any road on the property.

Phillip Choate grew up in the area and moved to the Subdivision in 1998. As a boy, he hunted on what became the Coley property, but not on the Di Sorbo property. He recalled the Old Road as "an old logging road" that became "very grown over." He had seen ruts in it from logging trucks. Choate was a local mail carrier and served on the original board of directors for the Subdivision. Mountain Ash Drive was finished around 2006. He recalled that before the property was subdivided into lots for sale, Bryant Coley, Sr., ask the association board for permission to put up a gate just off Mountain Ash Drive at what became the entrance to the Di Sorbos' lot. Coley wanted "to block that access road [i.e., the Old Road] to keep the four-wheelers . . . off his property because they would cut his fence and the cattle would get out. . . . And he also wanted permission to come across [the Old Road]" himself from his property to the back of the Di Sorbos' lot. Choate never saw a gate there, but recalled that Coley piled up brush to make the Old Road impassable at that point. When Mountain Ash Road was cleared, "the banks were put up and there was a pretty good ditch there, [and] it was difficult to see [the Old Road]. . . . If you didn't know it was there, you'd have a hard time seeing it." Choate testified that in the last ten years, since the Subdivision was developed, no one in the community had ever asked to use the Old Road again.

Dallas Cox, age 92, testified that he last used the Old Road or "Sidwell Road,"as he called it, in 1946. In later testimony, he said the Old Road "never had a name that [he] [knew] of." It started on Clear Creek Road, went into the Jim Garrett Road, it would "spring off and you could come down and cross Clear Creek way up there and you'd go into Plateau." He also testified that a section of the Old Road was called Baisley Road, and "it'd go to Henry's house but nobody would use it but him." Cox's father and Henry Baisley ran cattle and hogs down the Old Road and turned them loose on the land. Cox described the Old Road as a more or less "wagon road" or trail. He saw no one drive a car or buggy on the Old Road, but had seen some horse riders. He recalled a sawmill was located south of the Old Road at one point but never saw the owner haul anything out. On further questioning, Cox agreed he was not sure exactly which road the case concerned. He testified that he was describing the log roads and trails that the public used in the 1930s. At that time, the property in the area was all woodlands. According to Cox, all the trails in the area were owned by the Harrisons, and "they never did say nothing." He was aware that the public used a "trail" that crossed the Subdivision but didn't know where the Di Sorbo lot was or whether the trail in question went through that land.

David Sells, a registered land surveyor, surveyed the Old Road at the Coleys' request. Mr. Coley, Sr., identified the center of the Old Road. Sells said the Old Road, although grown over, was visible, and assumed it to be "an old logging road" that was "well traveled" in the past. It was nine to twelve feet wide, crooked and went around large trees in some places. From his work, Sells concluded that the Old Road went across the Di Sorbos' lot,

across Mountain Ash Drive, and into Lot 15, another Subdivision lot west of the Di Sorbos'.

"Junior" Davis, 78, lived in the area all his life. He described the "Old Road" as starting near the Baisley home and coming out on Plateau Road on one side and up a hill, and onto Jim Garrett Road on the other side. According to Davis, "Anybody that had any business going into Monterey or Mayland" used the Old Road. He referred to it as the Bartley Road from the point it passed the Baisley home, when it became the Baisley Road, then continued to a point where it had no name. His family traveled the road by foot, rode horses or a wagon and ran their cattle and hogs. He was present when Mr. Sells surveyed the road and had "no doubt" that the "Old Road" that Mr. Coley, Sr., pointed out was the same road he had once used two or three times a month without asking anyone's permission. According to Davis, those who used the Old Road maintained it by putting rocks on it or creating a route around the many mud holes which made the Old Road very crooked. He had once driven a car part way down the Old Road to Bartley Creek but no further because it became too rough. Davis had not been on the Old Road across the Coleys' property since 1955. He knew of no one who used the Old Road since then except for hunters.

Bryant Coley, Jr., testified that he lived within half a mile of the Old Road since 1966. He recalled going across the Di Sorbos' land on the Old Road and all the way across his family's property. He said the area was all woods then, but the Old Road was "well maintained" – there were no trees or branches down across it and a truck with mud tires could traverse the mud holes. The Coleys used the Old Road several times a month to go cut wood or check their cattle until 2006 when someone started blocking the way at the Di Sorbos' lot with stumps and debris. He saw signs or tracks that people traveled from the Old Road onto the Coleys' property, but never actually saw or spoke to anyone who did so. As Mr. Coley, Jr., described it, "they put the [Di Sorbos'] lot across the [Old Road]."

Edgar Miller, 53, went on the Old Road to Jim Garrett Road and on to Monterey with his father before other roads were built. He also had gone down the section of the Old Road called Bartley Road, to Baisley Bottom, to Pugh Road, to Plateau Road and on to Crossville. At the time, the Harrisons usually bulldozed the Old Road about once a year to "keep it where they could get in and out." While hunting, he had seen "some people" who drove trucks on the Old Road on the Coleys' property. He'd seen a car "every now and then" and once saw a patrol car "on past" the Old Road. He last saw a car on the Old Road in the early 1980s and had not used the Old Road since the Subdivision installed paved roads.

John Negron formerly held a position on the Subdivision's Association. He was aware that since around 2006 the Old Road, or "Bartley Road," extended from "Lot 15" across from the Di Sorbo property and onto the Coley property. He described the Old Road as "a rough cut with stumps" plainly visible by the ruts in it. The Association learned that

Mr. Coley, Sr., and some hunters were using the Old Road and advised Mr. Coley that it was private property. Mr. Coley, Sr., had once approached him about buying what became the Di Sorbo lot after Mountain Ash Drive was finished, but he was not willing to pay the listed purchase price.

Ralph Dearth lived in the Subdivision since 1997, three fourths of a mile from the Di Sorbos' lot. He never saw the Old Road when he moved in; he noticed a "path" about three feet wide some two or three years later. Since 1999, Kenneth Welker also lived in the Subdivision. He had seen the Old Road, "an unfinished road" a car's length wide, across the Di Sorbo lot sometime around 2006.

D.

Following the hearing, the trial court found that the road was not "properly dedicated" as a public road. We quote pertinent portions of its ruling:

> This case comes down to basically . . . [whether] this . . . roadway that abuts up to Mountain Ash Road, which is now part of the Cumberland Lakes subdivision, whether it was a public road, and if so, is it still a public road or has it been abandoned. [I]t's a really close question.
>
> For the last 50 to 75 years, people have been driving on these roads and these are roads in rural Cumberland County . . . there's all these little country lanes that attach that run from basically Monterey over in the edge of Putnam County all the way to Crossville that have been in existence since back in the early part of the last century.
>
> [T]o have a public road, you have to show by clear and convincing proof that the . . . roadway [] was dedicated for public use. And the way you do that is from . . . intent of . . . the landowner as to whether or not . . . they're giving this for the public's use.
>
> [O]ne of the ways you do this is [show] how the property was used for the last – off and on for the last 60 or 70 years. Give or take ten or 20 years in places, folks have used that roadway more so in the 1930s to the 1950s and not so much after that.

* * *

There is proof in the record that it was used by the public for very long time. I really struggled with that, but the case turns on . . . whether or not it was dedicated as a public road and I don't find that the proof to a clear and convincing standard has established that there was a dedication by the owners for that.

[B]ased on the totality of the testimony, . . . primarily . . . folks have just been given permission or the owners of the land have not objected to people driving over and using these roads. Especially in later years, primarily they've allowed people to go in there and hunt deer and turkey and probably dig ginseng and things of that nature through the various landowners.

Another reason that the Court finds . . . in addition to folks just having permission to drive over it and the landowners not stopping them from using these roads[,] is there's no proof that the county ever did anything to repair the roads or work on the roads. There's no proof that the public at large did anything to repair the [Old Road]. Basically if there was a mud hole in the road, they just drove around it. . . .

Having said that, the Court is going to make an alternative finding. If I am wrong and the appellate court were to find that there was a public road here, that there has been a dedication – and that's what this case turns on – I think the case law is clear . . ., Mr. Coley is an abutting landowner to this road and he would have a right of ingress and egress.

This Court has emphasized that the burden of proof required to establish a dedication of private land for public use is a heavy one. *See **Hargrove v. Carlton***, at \*1. Moreover, the burden may be that much heavier where the public land in question consists primarily of rural, unimproved woodlands or farmlands as in the case at bar. For this reason, we think that the trial court's stated reliance, in part, on ***McKinney v. Duncan***, 118 S.W. 683, 694-95 (Tenn. 1909), is most appropriate. Therein, the Supreme Court observed:

Dedication of a road to the public use over the waste and unenclosed lands of an individual ought not to be inferred from bare use alone. Thus, where a road has been in existence for

-10-

more that fifty years, and had originally passed entirely through woodland, the jury were instructed that the mere use by the public, however uninterrupted and long-continued, would be insufficient to constitute it a public road, but must be accompanied by facts which show the use to have been claimed as a right, and not by permission of the owner, such as working on it, keeping it in repair, and requiring the removal of obstructions. Thus, it has been held that the fact that a farmer leaves a lane through his farm for his own convenience, and permits the public to use it as a highway for fifteen years, does not warrant the inference of dedication. An intention to dedicate must be obvious, and the same act which would warrant the inference in cities and towns would be quite insufficient in sparsely agricultural districts.

The proof establishes nothing more than a mere license or permission of the owner to the inhabitants of a local neighborhood to use the pathway as a matter of favor and convenience; and such use being only by sufferance, during the pleasure of the owner, he had a right to put an end to it at any moment. No use or acceptance of the way by the public is shown, nor any recognition of it by the county court. That a right of way may be claimed by a dedication to the public use by the owner of the soil is not denied, but with us this doctrine must be cautiously admitted. Its too easy application would defeat the right of the owner of the soil to have compensation for the damages sustained by laying out a road over his land, to which he is entitled when such road is laid out by the proper authorities.

Complainant does not claim an express dedication from any of the successive owners of the land, but an implied one, because he and others living in the neighborhood were allowed to use this passway, repairing it from time to time for this purpose, without interruption, for thirty years. This is all of their case. The strip of land over which the road runs was unenclosed and in woods, and the most that can be said is that while in that condition the owners did not object to the use of it by the public. They merely permitted the use of it temporarily as a matter of favor. This is common in every part of this State, where there

are unenclosed lands, and no intention upon the part of the owners to appropriate them to the public use can be implied from such conduct. They have the right at any time to inclose them and forbid further use by the public.

(Internal citations omitted.)

As previously noted, in order to establish an implied dedication of the Old Road to public use, there must be clear and convincing proof "that the owner intended to permanently part with his property and vest it in the public." *See Jackson v. Byrn,* 216 Tenn. at 543, 393 S.W. at 140 (quoting *McKinney*, 121 Tenn. 265, 271, 118 S.W. 683, 694). Such intent was shown, for example, in *Dennis v. Miceli*, M1999-00056-COA-R3-CV, 1999 WL 1072559 (Tenn. Ct. App. M.S., filed Nov. 30, 1999). That case also involved a dispute between neighboring landowners over access to an old country road that crossed their properties. The testimony showed that the road existed and was freely used by people in the area since its purchase by a Mr. Madewell in 1958. *Id*. at *4. House trailers were located upon it, the county laid it with rock and gravel, and the school bus and mail carrier traveled on it daily. The public regularly used the road, first with horses and buggies, later with four-wheel drive vehicles, and it was always maintained and passable. *Id*. By the time of trial, the public's use of the road had essentially ceased. Given these facts, the trial court held that the road was impliedly dedicated to the public's use by Mr. Madewell. In affirming, we observed that "[t]he required offer and acceptance occurred when Mr. Madewell permitted the school bus, the mail carrier, and the public to use the road and when the county accepted Mr. Madewell's invitation to maintain the road." *Id*. at *5.

Returning to the case at bar, there is no such proof of the landowners' intention or dedication. At the outset, we agree with the Di Sorbos' assertion that it remains questionable whether the Old Road offers a continuous, clearly identifiable route that one could enter at Jim Garrett Road and take all the way to Plateau Road, as the Coleys contend. Witnesses described sections of a road or routes, with various names or no name, that led from one landowners' property to the next and eventually to main roads and on "to town," as it were. To the extent that witnesses testified that a portion of the Old Road crossed the parties' property, their testimony indicated it was mostly an access route onto unimproved woodlands that past landowners, such as the Baisleys, the Bartleys, and the Harrisons, used to get in, out of, and around their properties. They used the Old Road, or parts of it, to access the lands for hunting, logging timber, grazing cattle, running hogs and similar purposes and raised no objections when others took the Old Road onto or across their properties.

Dallas Cox last used the Old Road in 1946 and suggested that, at one point, it was one of the many unnamed old logging trails in the area on land the Harrisons owned. As Mr. Cox

put it, he never asked permission to use the trails and the Harrisons "never did say nothing." The testimony showed that virtually no one except the Harrisons maintained the Old Road. About once a year, until 1969, they used a bulldozer to clean it out "to keep it where they could get in and out." They did the same on the roads on their neighbors' properties. Otherwise, the proof was that those that used the Old Road placed rocks on it, but as to the many mudholes they encountered, they simply took paths around them. In recent years, rather than repairing or removing obstructions on the Old Road, landowners such as Mr. Coley, Sr., Jimmy Davis and the Subdivision representatives seemingly expended more time and effort to block its use by the public. Although Mr. Coley, Sr., maintained that the Old Road was a public road running across his property, as well as the Di Sorbos', he fenced his land and for a time kept a locked gate across the road in the belief that no one needed to go back there.

In summary, we think such "bare use" by the public, and little else, cannot meet the clear and unequivocal level of proof required to establish an implied dedication of the Old Road to public use. We agree with the trial court's finding that, basically, "folks have just been given permission or the owners of the land have not objected to people driving over and using these roads." This alone does not evince an intention on the part of the landowners to permanently part with their private property and give it over to the public's use.

The evidence does not preponderate against the trial court's finding that the Old Road was never dedicated as a public road. Accordingly, the Coleys possess no right of access across the Di Sorbo property. The trial court properly dismissed the complaint.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, Bryant Coley, Sr., Bryant Coley, Jr., Etta Coley and Eleisha Coley. This case is remanded, pursuant to applicable law, to the trial court for collection of costs assessed below.


_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE


-13-